O

# United States District Court
# Central District of California

ANA M. HANSON et al.,

    Plaintiffs,

v.

STUART DEAN COMPANY et al.,

    Defendants.

Case № 2:18-cv-06682-ODW (PLAx)

**ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [19]**

## I. INTRODUCTION

Plaintiffs Ana M. Hanson and Tim D. Maitland, as trustees and administrators of their respective trusts ("Plaintiffs" or "Trust Funds"), sue to compel an audit of Defendant Stuart Dean Company's ("Stuart Dean") records to determine contributions allegedly due to the trusts' employee benefit plans. (Compl. ¶ 1, ECF No. 1.) Plaintiffs move for summary judgment, contending that Stuart Dean is obligated, pursuant to various collective bargaining agreements, to make contributions to the Trust Funds and allow the Trust Funds to perform audits ("Motion"). (Mot. for Summ. J. ("Mot.") 1, ECF No. 19.) For the reasons discussed below, the Court **DENIES** Plaintiffs' Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

A. **FACTUAL BACKGROUND**

Plaintiff Ana M. Hanson ("Hanson") is a trustee and enforcement administrator of the Southern California Painting and Drywall Industries Health and Welfare Fund, the Southern California Painting and Decorating Labor Management Cooperation Committee Trust Fund, and the Southern California Painting and Drywall Industries Apprenticeship Trust Fund ("Hanson Funds"), authorized by these trust funds to bring this action as a plaintiff. (Pls.' Statement of Uncontroverted Facts ("SUF") 1, ECF No. 19-2; Decl. of Ana M. Hanson ¶ 1, ECF No. 19-7.)[2] Plaintiffs allege that Tim D. Maitland is the Fund Administrator of the International Union of Painters and Allied Trades Industry Pension Fund ("Maitland Fund"). (Compl. ¶ 5.) The Hanson Funds and the Maitland Fund ("Trust Funds") are "jointly trusteed labor-management multiemployer trust funds established to provide health, pension, and other benefits to employees covered by the Southern California Painters & Allied Trades District Council 36 [("DC 36")] Master Labor Agreement." (SUF 3.) The Trust Funds are funded by contributions from participating employers. (SUF 5.)

Stuart Dean operates nationally to provide interior and exterior architectural restoration services. (SGI 21–22.)[3] Stuart Dean's operations are managed by General Managers ("GM") who act regionally and have authority to bind only their regional branch of the company. (SGI 23.) During the time period relevant here, Jeffrey Nanna ("Nanna") has been the GM for Stuart Dean San Francisco ("Stuart Dean SF") and

---

[2] In its opposition to Plaintiffs' Motion, Stuart Dean objects to the Declarations of Hanson, John Sherak, and Robert Jones as not timely disclosed under Federal Rules of Civil Procedure 26(a) and 37(c)(1). (Opp'n to Mot. ("Opp'n") 16–17, n.3, ECF No. 20; *see* Def.'s Statement of Genuine Issues ("SGI") 1, ECF No. 20-1.) Stuart Dean argues these declarations should be stricken and, on that basis, disputes many of Plaintiffs' facts, "because no admissible evidence was provided." (*See, e.g.*, SGI 1.) Plaintiffs do not reply to Stuart Dean's opposition, respond to Stuart Dean's objections, or otherwise support that their disclosures were timely and may be considered. Nevertheless, even when the Court considers the challenged declarations, as discussed below, the Court finds summary judgment improper. Thus, for the purposes of this Motion only, the Court considers Plaintiffs' declarations.

[3] As Plaintiffs did not respond to Stuart Dean's additional facts, Stuart Dean's facts are undisputed.

Adolfo Bran has been the GM for Stuart Dean Los Angeles ("Stuart Dean LA"). (SGI 24.)

In Spring 2016, Stuart Dean SF was a subcontractor on a highrise-towers project in San Francisco. (SGI 30.) The Painter's and Allied Trades District Council #16 in Northern California ("DC16") organized a picket to stop work on the project, contending some of Stuart Dean SF's employees were performing work within DC16's jurisdiction. (SGI 30.) To resolve the dispute, Stuart Dean SF GM Nanna met with DC16 three times in April and May 2016. (SGI 33.) Among other things, DC 16 wanted Nanna to sign its Master Labor Agreement ("MLA"). (SGI 37.)

After reviewing the DC16 MLA, Nanna requested the second meeting specifically to discuss concerns regarding the meaning of Article 5 of the DC16 MLA, the "out of area" provision. (SGI 38.) Article 5, Section 1 of the DC16 MLA lists the counties comprising the territorial jurisdiction covered by the agreement. (SGI 39.) It also contains out-of-area provisions, including Section 2:

> **Section 2. The Employer party hereto shall, when engaged in work outside the geographic jurisdiction of the Union party to this Agreement, comply with all of the lawful clauses of the Collective Bargaining Agreement in effect in said other geographic jurisdiction** and executed by the Employers of the industry and the affiliated Local Unions in that jurisdiction . . . . provided, however, that as to employees employed by such Employer from within the geographic jurisdiction of the Union party to this Agreement and who are brought into an outside jurisdiction, such employee shall be entitled to receive the wages and conditions effective in either the home or outside jurisdiction . . . .

(SGI 39 (emphasis added).) The MLA did not define "Employer party" or "lawful clauses of the Collective Bargaining Agreement" and Nanna thus found Article 5 unclear. (*See* SGI 38.)

At the second meeting, Nanna sought clarification regarding the meaning of Article 5 Section 2. (SGI 38.) Nanna explained that, as the GM of Stuart Dean SF, he had no authority to bind Stuart Dean operations other than San Francisco and sought confirmation that the out of area clause did not attempt to do so. (SGI 38.) DC16

representatives, Sherak and Echeveria, responded that such an application was not the intent of the clause, and that if Stuart Dean wanted to sign nationally, it could sign a separate national CBA. (SGI 38.) Nanna declined. (SGI 38.) Sherak explained that Article 5 and its out of area provision was limited to the counties identified in Section 1 and its out of area provision applied only to Stuart Dean SF employees, and only when they were assigned to work outside of those counties. (SGI 39.)

After further communication and confirmation regarding the meaning and application of DC16 MLA Article 5, DC16 and Nanna met for a third time. (SGI 42.) At that meeting, Nanna reiterated that he only had authority to sign on behalf of Stuart Dean SF and that he was signing based on the mutual understanding of Article 5's out of area provision, as discussed above. (SGI 43.)

In October 2016, Stuart Dean LA subcontracted to do painting work on the Century Plaza project in the Los Angeles area. (SGI 56.) As part of that project, DC36 (the Painter's Union in Southern California) asked Stuart Dean LA to sign DC36's MLA, which Stuart Dean LA refused to do for projects other than Century Plaza. (SGI 58–59.) Instead, Stuart Dean LA signed a Project Labor Agreement ("PLA") and Participation Agreement expressly limited to the Century Plaza project. (SGI 60–62.) During this negotiation, no one from DC36 contended that DC16 MLA's out of area provision already bound Stuart Dean LA to DC36's MLA. (SGI 63.)

In May 2018, DC36 sought to audit Stuart Dean's payroll and other records covering the time period of June 1, 2016 to March 31, 2018. (SGI 64.) Ultimately, Stuart Dean denied the request because Stuart Dean found that it was overbroad and encompassed more than just the Century Plaza project, which was the only Los Angeles-area Stuart Dean-project that involved DC36. (SGI 64–66.)

**B.  PROCEDURAL BACKGROUND**

Plaintiffs subsequently filed this lawsuit in August 2018 seeking to audit Stuart Dean's records for unpaid contributions. (*See* Compl.) Plaintiffs now move for summary judgment on the basis that DC16's out of area provision applies to Stuart Dean

LA and obligates Stuart Dean to make contributions and permit audit for any work performed in the geographical jurisdiction of DC36. (Mot. 2.) Stuart Dean opposes, arguing that the DC16 MLA out of area provision is ambiguous and, based on the mutual understanding at the time of execution, applies only to the work of Stuart Dean SF employees and not to all Stuart Dean employees in other locations. (Opp'n 1–2.) Plaintiffs did not reply to Stuart Dean's opposition or dispute its facts or evidence.

## III. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu*, 198 F.3d 1134.

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "non-moving party must show that there are 'genuine factual issues that properly can be resolved only by a finder of fact *because they may*

*reasonably be resolved in favor of either party.*'" *Cal. Architectural Bldg. Prods.*, 818 F.2d at 1468 (quoting *Anderson*, 477 U.S. at 250). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Id.* (citing *Matsushita Elec. Indus.*, 475 U.S. at 586–87). "[U]ncorroborated and self-serving" testimony will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should set out "the material facts as to which the moving party contends there is no genuine dispute." C.D. Cal. L.R. 56-1. A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute. C.D. Cal. L.R. 56-2. "The moving party, in its reply, shall respond to the additional facts in the same manner and format that the opposing party is required to adhere to in responding to the Statement of Uncontroverted Facts." (Scheduling and Case Management Order 7, ECF No. 16.) "[T]he Court may assume that the material facts as claimed and adequately supported . . . are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." C.D. Cal. L.R. 56-3.

### IV. DISCUSSION

Plaintiffs argue summary judgment is warranted because the DC16 MLA out of area provision binds Stuart Dean to DC36's MLA, which in turn obligates Stuart Dean to make contributions and allow audit for any work done in the Southern California area. (Mot. 2.) Stuart Dean contends the out of area clause is ambiguous and the intent

of the parties to the agreement was that the clause would not bind all Stuart Dean employees, but only Stuart Dean *SF* employees when they worked outside of the DC16 MLA jurisdiction. (Opp'n 1–2.) Stuart Dean argues that Nanna never would have signed the DC16 MLA had it been the case that the out of area provision applies in the manner Plaintiffs contend. (Opp'n 15–20; SGI 46.)

"For an employer to be obligated to make employee benefit contributions to a trust fund, there must exist a binding collective bargaining agreement [("CBA")]." *Sw. Admin., Inc. v. Rozay's Transfer*, 791 F.2d 769, 773 (9th Cir. 1986). A collective bargaining agreement is not an ordinary contract. *See United Steel Workers of Am. v. Warrior & Golf Nav. Co.*, 363 U.S. 574, 578 (1960). "It is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate." *Id.* Thus, "[f]or reasons of public policy, traditional contract law does not apply with full force in actions brought under [ERISA] to collect delinquent trust fund contributions." *Sw. Admin.*, 791 F.2d at 773. Accordingly, when faced with a dispute over terms of a CBA, "district court[s] should not give undue weight to the literal language" of the provisions. *Ariz. Laborers, Teamsters & Cement Masons Local 395 Health & Welfare Tr. Fund v. Conquer Cartage Co.*, 753 F.2d 1512, 1520 (9th Cir. 1985) ("*Ariz. Laborers*").

> When the operation of an ordinary contract is not clear from its language, a court generally may consider extrinsic evidence to determine the intent of the parties in including that language. That principle is applied with even greater liberality in the case of a collective bargaining agreement. In ascertaining the intent of the parties to a collective bargaining agreement, "the trier of fact may look to the circumstances surrounding the contract's execution, including the preceding negotiations . . . . It may also consider the parties' conduct subsequent to contract formation . . . and such conduct is to be given great weight."

*Id.* at 1517–18 (citations and emphasis omitted; alterations in original).

As obligations under CBAs "rest ultimately on the principle of mutual assent, . . . the surrounding circumstances and the intentions of the parties are relevant to

determining if a binding agreement exists." *Operating Eng'rs Pension Tr. v. Gilliam*, 737 F.2d 1501, 1503–04 (9th Cir. 1984). Accordingly, "when an agreement's meaning is not clear on its face and contrary inferences as to intent are possible, there exists an issue of material fact for which *summary judgment is ordinarily inappropriate*." *Ariz. Laborers*, 753 F.2d at 1518 (emphasis added).

Article 5 of the DC16 MLA is ambiguous. The out-of-area provisions impose obligations on the Employer but fails to define that term. Further muddying the waters, Article 5 uses the same word to refer to different Employer entities: "the Employer party" (Section 2), "Employers" "engaged in work outside the geographical jurisdiction of this Agreement" (Section 3), "Employers from outside the jurisdiction[]" (Section 4), "the signatory Employer" (Section 6), and "another Employer" (Section 6). Because the obligations imposed by Article 5 are unclear on their face regarding their subject, Article 5 is ambiguous. *See McKinstry Co. v. Sheet Metal Workers Int'l Ass'n, Local Union No. 16*, 859 F.2d 1382, 1386 (9th Cir. 1988) (finding the out of area clause ambiguous where "it does not specify the party whose relationship with the Employer is governed by the local working conditions").

"In ascertaining the intent of the parties to a collective bargaining agreement, 'the trier of fact may look to the circumstances surrounding the contract's execution, including the preceding negotiations.'" *Ariz. Laborers*, 753 F.2d at 1517–18. Stuart Dean SF's GM, Nanna, and DC16 representatives met three separate times before Nanna signed the DC16 MLA. Nanna requested the second and third meeting to clarify that the out of area clause applied only to Stuart Dean SF employees and only when they worked outside of the territories identified in Article 5 Section 1. (SGI 33, 38–41.) Nanna emailed Mr. Echeverria, a DC16 representative, clarifying that the out of area provision "appl[ies] to work done by the company outside DC16's jurisdiction only when that work is done by employees represented by DC16." (SGI 40–41.) Mr. Echeverria responded that the "language . . . protects the member (wages and conditions) when they work outside the jurisdiction." (SGI 40–41.) Mr. Sherak, another

DC 16 representative, also confirmed that the intent of the out of area provision was to apply when Stuart Dean SF employees worked outside the DC16 counties. (SGI 43.) Nanna explained at each meeting that he did not have authority to bind Stuart Dean beyond the San Francisco region, and would and could not sign a national agreement. (SGI 38, 43.) Sherak even offered Nanna a separate national CBA, which Nanna declined to sign. (SGI 38.) These surrounding circumstances support that the parties did not intend to bind Stuart Dean nationally, and instead intended the DC16 MLA's out of area provision to apply to Stuart Dean SF employees when they work outside DC16's jurisdiction.

Although Plaintiffs did not reply or dispute Stuart Dean's additional facts, in their Motion Plaintiffs offer the declaration of John Sherak, which states: "at no time did [Sherak] witness anyone from [DC16] . . . agree to allow Stuart Dean to modify the terms of the [DC16 MLA] as it relates to the [out of area] clause and the performance of work in other jurisdictions." (Decl. of John Sherak ¶ 6, ECF No. 19-10.) At best, this statement merely confirms that the language at issue was not altered and remains ambiguous; it does not undermine that DC16 and Nanna discussed the meaning of the out of area provision at length and reached an understanding about the meaning before executing the agreement. At a minimum, a dispute of fact exists regarding the intent of the signatory parties as to the out of area provision.

The agreement's meaning is not clear on its face and contrary inferences as to the parties' intent may be drawn. Consequently, there exists an issue of material fact for which summary judgment is inappropriate. *See Ariz. Laborers*, 753 F.2d at 1518.[4]

---

[4] This conclusion is bolstered by the parties' subsequent conduct. *See id.* In particular, when DC36 in Southern California and Stuart Dean LA negotiated the Century Plaza project, no one acted as though Stuart Dean LA was already bound to the DC36 MLA by way of the DC16 MLA's out of area provision. Indeed, DC36 sought to have Stuart Dean LA sign the DC36 MLA. Had Stuart Dean already been bound to the DC36 MLA, there would have been no need to attempt to bind it anew.

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES** Plaintiffs' Motion for Summary Judgment. (ECF No. 19).

**IT IS SO ORDERED.**

January 27, 2020

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**